MENKE ET AL., APPELLANTS, *v.* OHIO HIGH SCHOOL ATHLETIC ASSOCIATION, APPELLEE.

(No. C-800723—Decided September 16, 1981.)

*Mr. Sylvan P. Reisenfeld* and *Mr. Robert S. Hiller,* for appellants.

*Messrs. Kohnen & Kohnen* and *Mr. Roger W. Healey,* for appellee.

*Per Curiam.* The central focus in this appeal is the enforceability of Rule 9, Section 2(g) (hereinafter "Rule 9-2[g]") of the Ohio High School Athletic Association (hereinafter "Association"), which reads in full as follows:

"A student whose parents live in another state will be ineligible for athletics in an Ohio member school."

Contrary to plaintiffs' claims that Rule 9-2(g) violates provisions of the United States Constitution, that it was adopted arbitrarily and through impermissible collusion, and that the court should therefore enjoin its enforcement, the trial court denied plaintiffs' request for a permanent injunction. We affirm.

I

Plaintiffs-appellants (hereinafter "plaintiffs"), acting by and through their parents, are minor residents of Kentucky who had been accepted for enrollment in the ninth grade (one plaintiff, in the eleventh grade) for the 1980-1981 school year at St. Xavier High School, a Roman Catholic school that is a member of the Association. Rule 9-2(g) renders them ineligible for interscholastic athletics in Ohio only. They remain eligible for all other purposes in parochial and private schools in Ohio, and for all school purposes, including athletics, in Kentucky.

The Association is a non-profit unincorporated association, the membership of which is voluntary. For the academic year 1980-1981, the membership included 827 Ohio high schools, public, parochial and private. Its purpose, as has been the case for more than seventy years, is to promote pure, wholesome and mature athletics in Ohio high schools. It has adopted, and from time to time amended, rules to regulate and administer interscholastic athletic competition among its members. Amendment of the rules is accomplished by majority vote cast by written ballot, after due notice. In 1979, the Association's Board of Control approved and recommended to the membership an amendment to Rule 9-2(g) whereby non-resident students, instead of

being eligible only after one year of enrollment, would not be eligible for athletics throughout their attendance at any member school. As the trial court found, the purpose of the amendment was to prevent the recruitment of non-resident athletic stars, to prevent the replacement of Ohio students with those non-resident stars in interscholastic competition, and to maintain competitiveness among member schools. The amendment was adopted by a 65.1 percent majority vote.

Plaintiffs contend in their first assignment of error that the trial court erred by denying their request for a permanent injunction because it applied the "rational basis" test in determining whether Rule 9-2(g) violated the equal protection guarantees of the United States Constitution rather than subjecting the Rule to "strict scrutiny," and because the court did not properly evaluate a certain irrebuttable presumption contained in the Rule.[1] In the second assignment, plaintiffs assert that Rule 9-2(g) "was adopted arbitrarily and through impermissible collusion." We find no merit in either assignment of error.[2]

## II

Plaintiffs contend that the court erroneously used limited scrutiny (rational relationship to underlying purposes), rather than strict scrutiny, in analyzing the constitutionality of Rule 9-2(g). We hold that the court did not err. The court must use strict scrutiny only when the plaintiffs themselves are from a "suspect class," or when the right claimed is one of the "fundamental" rights guaranteed by the Constitution. See, generally, Gunther, Cases and Materials on Constitutional Law 657, Chapter 10; Tribe, American Constitutional Law 991, Chapter 16. The plaintiffs fail both tests.

Nonresident high school athletes do not comprise a "suspect class"; that is, a class that has been recognized by the Supreme Court as being entitled to "extraordinary protection from the majoritarian political system" because the class has been purposely subjected to unequal treatment and is saddled with disabilities and relegated to political powerlessness. No one would seriously suggest that high school athletic stars form a "suspect class."

Education is not one of the rights that has been recognized by the Supreme Court as being "fundamental." The rights so recognized include the right to vote, the right of access to and equal treatment in civil and criminal litigation, and the right to migrate, but education is not among them. On the contrary, education is not protected by the United States Constitution either explicitly or implicitly. *San Antonio Independent School District* v. *Rodriguez* (1973), 411 U.S. 1. Education is a process having a number of components including studies, social and other extracurricular activities and athletics, and as only one of those components, participation in interscholastic athletics, in and of itself, has never been held to be a constitutionally protected civil right. *Albach* v. *Odle* (C.A. 10, 1976), 531 F. 2d 983; *Mitchell* v. *Louisiana High School Athletic Assn.* (C.A. 5, 1970), 430

---

[1] It is important to note that plaintiffs do not argue that Rule 9-2(g) is unconstitutional because it has no rational relationship to its purposes. Plaintiffs appear to concede the rational relationship, aiming their attack at the use of that method of analysis, and claiming that the Rule should be tested by "strict scrutiny."

[2] Because they are not raised by this appeal, we do not reach and do not decide the questions of whether the plaintiffs had standing and whether the adoption of Rule 9-2(g) was "state action." On the latter question, see *Burton* v. *Wilmington Park Authority* (1961), 365 U.S. 715; *Louisiana High School Athletic Assn.* v. *St. Augustine High School* (C.A. 5, 1968), 396 F. 2d 224; *Oklahoma High School Athletic Assn.* v. *Bray* (C.A. 10, 1963), 321 F. 2d 269.

F. 2d 1155; *Kentucky High School Athletic Assn.* v. *Hopkins County Bd. of Edn.* (Ky. Ct. App. 1977), 552 S.W. 2d 685. Further, we believe that whatever are the benefits associated with participation in interscholastic athletics, the regulation of the right to participate therein by Rule 9-2(g) for the stated purposes of eliminating recruitment and balancing competition does not impinge on plaintiffs' other "fundamental" rights (such as freedom of association, freedom of religion, freedom to migrate, and privacy rights) to such an extent or in such a manner as to invoke the strict scrutiny analysis.

### III

In plaintiffs' second issue under the first assignment of error, they claim that Rule 9-2(g) is unconstitutional because it creates an irrebuttable presumption and thus violates due process. The conclusive presumption is that because plaintiffs come from other states, they have been recruited or otherwise attracted to Ohio where they will replace Ohio athletes and throw interscholastic competition into imbalance. Such a presumption, so goes the argument, is constitutionally unenforceable under *Cleveland Bd. of Edn.* v. *LaFleur* (1974), 414 U.S. 632, *Vlandis* v. *Kline* (1973), 412 U.S. 441, and *Stanley* v. *Illinois* (1972), 405 U.S. 645. We find no merit in this contention, for two reasons.

First, unlike the scheme in *Vlandis,* Rule 9-2(g) does not create a conclusive presumption about residence that is invidious because it prevents proof to the contrary. In *Vlandis,* the statutory definition of "residents" for purposes of fixing the tuition to be paid by students in a state university was held to be invalid because it did not allow an applicant to establish the reality of his or her change of residence into the state. In the instant case, there is no presumption about the parents' residences; they are admittedly out of state. The presumption flowing from the fact of residence is that plaintiffs have been impermissibly attracted to Ohio and will throw Ohio interscholastic athletics out of balance, but this conclusion has a rational nexus to an admittedly legitimate concern of the Association, a nexus which plaintiffs do not attack.

Second, unlike the schemes in *LaFleur* and *Stanley,* the "right" or "entitlement" claimed by plaintiffs (that is, to participate in interscholastic athletics) does not enjoy a constitutionally protected status. See *Weinberger* v. *Salfi* (1975), 422 U.S. 749, 771-772. If the "penalty" imposed by Rule 9-2(g) were more than ineligibility for interscholastic athletics, we might be persuaded. A high school student is entitled to a hearing, informal in nature, before he can be suspended from school, thus depriving him of participation in classes, extracurricular activities and athletics. Students have property and liberty interests in their education that are protected by the Fourteenth Amendment. *Goss* v. *Lopez* (1975), 419 U.S. 565. But participation in athletic competitions, standing by itself as one stick in a bundle, does not rise to the level of a separate property or liberty interest to which a non-resident is entitled and of which he cannot be deprived without due process. *Colorado Seminary* v. *National Collegiate Athletic Assn.* (C.A. 10, 1978), 570 F. 2d 320; *Mitchell* v. *Louisiana High School Athletic Assn., supra.*

The first assignment of error has no merit.[3]

---

[3] We have not discussed any constitutional issues that were not specifically presented in the trial court, including the claim of violation of plaintiffs' privileges and immunities under Section 2, Article IV, United States Constitution. Such claims may be deemed waived. *State* v. *Jones* (1981), 67 Ohio St. 2d 244, 250 [21 O.O.3d 152]; *Szymanski* v. *Halle's Dept. Store* (1980), 63 Ohio St. 2d 195 [17 O.O.3d 120]; *Republic Steel Corp.* v. *Bd. of Revision* (1963), 175 Ohio St. 179 [23 O.O.2d 462].

## IV

The second assignment claims error in failing to hold that the adoption of Rule 9-2(g) was accomplished "arbitrarily and through impermissible collusion." We find no merit in this claim, because the record contains ample evidence that the 1979 amendment to Rule 9-2(g) was adopted after due notice, by a majority vote cast by written ballot, and in full compliance with the reasonable and democratic procedures set forth in the Constitution and Rules of the Association. There was nothing arbitrary or collusive about it. See *State, ex rel. Ohio High School Athletic Assn.,* v. *Judges of the Court of Common Pleas of Stark County* (1962), 173 Ohio St. 239 [19 O.O.2d 52].

We affirm.

*Judgment affirmed.*

BLACK, P.J., SHANNON and KLUS-MEIER, JJ., concur.