Annette **HEBERT** et al.

v.

Joseph **VENTETUOLO** et al.

No. 81–68–Appeal.

Supreme Court of Rhode Island.

Aug. 16, 1984.

Gerald C. DeMaria, Higgins, Cavanagh & Cooney, Albert R. Romano, Almonte, Lisa & Pisano, Providence, for plaintiffs.

Paul A. Ward, Jr., Providence, for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the plaintiffs from a trial justice's grant of summary judgment in favor of the defendants.

The plaintiffs Annette Hebert and Jade Cicerchia (guardians) were guardians for

two high school students, plaintiffs Mark J. Hebert and Robert A. Finelli (students), at the time suit was instituted. The students were suspended from playing hockey on their high school's hockey team. Their suspensions resulted from suspicions among school officials that the students had obtained guardianships for the sole reason of changing their legal address, thereby entitling them to play on the Cranston East High School hockey team. Joseph Ventetuolo, principal of the Cranston East High School and one of the several defendants named, informed the students that they were suspended from playing hockey on November 28, 1979.

The students were not given a formal hearing or told of the reasons for their suspensions. Shortly thereafter, defendant Rhode Island Interscholastic League, hereinafter referred to as the league, held a hearing on the students' eligibility to play hockey on the Cranston East hockey team. The league ruled that the students were eligible to play but that another suspended student was ineligible to play for a twenty-week period. The league ruled that the student was ineligible based on article II, section 7, of the league rules.

The students as well as their guardians filed suit in United States District Court as parties pursuant to 42 U.S.C.A. §§ 1983–1988 (West 1979) alleging a violation of their rights under the United States Constitution. The United States District Court judge granted defendants' motion for summary judgment, finding that the league's suspension of the students was based on the rules governing the eligibility of transfer students to participate in interscholastic athletics and that the rules were rationally related to the goals of the school system, and thus were not constitutionally violative. The plaintiffs appealed to the United States Court of Appeals for the First Circuit. The First Circuit Court dismissed the appeal and affirmed the judgment.

Following the league's adoption of amended rules, however, plaintiffs filed a complaint in the Superior Court alleging that defendants' actions together with the amended rules of defendant league were in violation of their constitutional rights of due process and equal protection under the Rhode Island Constitution.

The defendants thereafter filed a motion for summary judgment pursuant to Rule 56(c) of the Superior Court Rules of Civil Procedure on the ground that the record was void of any factual dispute. The trial justice granted partial summary judgment finding that there existed no genuine issue of fact and that the issues raised in the Superior Court were the same issues that had been litigated in the United States District Court action, and were therefore res judicata. However, the trial justice proceeded to consider the two questions raised under the Rhode Island Constitution. The trial justice found that the league could promulgate and enact rules governing the eligibility of transfer students to compete in interscholastic athletics, finding that these rules were neither arbitrary nor capricious. Furthermore, the trial justice found that the schools could implement these rules as they were constitutionally supported upon a rational basis.

The issues on appeal are (1) whether the granting of summary judgment as to the issues raised and litigated in the United States District Court was proper; (2) whether the league, a voluntary nonprofit organization, may promulgate and enact rules governing the eligibility of transfer students to participate in interscholastic sports; and (3) whether the schools may agree to implement these rules.

I

The doctrine of res judicata operates as an absolute bar to a cause of action where there exists "(1) identity of parties, (2) identity of issues and (3) finality of judgment." *Air-Lite Products, Inc. v. Gilbane Building Co.*, 115 R.I. 410, 422, 347 A.2d 623, 630 (1975); *DiSaia v. Capital Industries, Inc.*, 113 R.I. 292, 298, 320 A.2d 604, 607 (1974). When the doctrine is invoked, it serves to render the prior judg-

ment conclusive as to any issues that were raised or which could have been raised and litigated. *Zalobowski v. New England Teamsters and Trucking Industry Pension Fund,* 122 R.I. 609, 612, 410 A.2d 436, 437 (1980); *Armstrong v. Armstrong,* 117 R.I. 83, 86, 362 A.2d 147, 149 (1976); *Corrado v. Providence Redevelopment Agency,* 113 R.I. 274, 277, 320 A.2d 331, 332 (1974).

The plaintiffs contend that there was neither an identity of issues nor an identity of parties between the United States District Court and Superior Court actions. The plaintiffs' position is that summary judgment was improperly granted since res judicata was incorrectly applied. The plaintiffs' basis for claiming that there was not an identity of parties in the two actions is that two of the four plaintiffs named in the United States District Court action filed a supplemental complaint which raised issues discussed by the United States District Court in its decision. They argue that since the two plaintiffs filing the supplemental complaint were not parties to the Superior Court action, and since the plaintiffs named in the Superior Court action were not named in the supplemental complaint, there did not exist an identity of parties.

However, their contention is without merit. A review of the complaint filed in the United States District Court indicates that all four plaintiffs were named as parties. Moreover, the trial judge in the United States District Court in rendering his decision referred to all the parties.

Additionally, plaintiffs maintain that the nonidentity of issues in the two actions precluded the trial justice's granting of summary judgment based on the principles of res judicata. We agree that new constitutional issues under the Rhode Island Constitution were raised in this action. However, a review of the trial justice's decision shows that summary judgment was granted only as to those issues considered and resolved in the United States District Court action.

■ Finally, the requirement that there be finality of judgment was satisfied by the federal trial judge's granting of summary judgment in the federal action. It is clear that the granting of a motion for summary judgment is the proper method of disposing of an action barred by res judicata. *Armstrong v. Armstrong,* 117 R.I. at 86, 362 A.2d at 149; *Air-Lite Products, Inc. v. Gilbane Building Co.,* 115 R.I. at 423, 347 A.2d at 630; 1 Kent, *R.I.Civ.Prac.* § 56.4 at 420 (1969). Furthermore, where a summary judgment motion is granted in a prior proceeding it will operate as a bar and trigger the granting of another such motion in a later action in which the same issues are raised. *Air-Lite Products, Inc.,* 115 R.I. at 423, 347 A.2d at 630.

■ Having reviewed the pleadings, affidavits, and other materials presented, we find that the trial justice correctly concluded that the findings of the United States District Court action were res judicata and thus dispositive of those same issues raised in the Superior Court action.

## II

Next, we must consider whether the league could promulgate eligibility rules which govern the eligibility of transfer students. The plaintiffs contend that the promulgation of rules governing participation in interscholastic sports in the public schools of the city of Cranston is a function legislatively vested in the Cranston School Committee. The plaintiffs argue that because there is no legislative authority authorizing delegation of this function, the school committee's delegation of this function to the league was improper.

In support of their claim plaintiffs refer to G.L. 1956 (1981 Reenactment) §§ 16–2–16 and 16–2–18. Section 16–2–16 vests in the school committee of each city, town, or regional district, authority to make the "rules and regulations for the attendance and classification of the pupils." Section 16–2–18 makes clear that "the entire care, control, and management of all public

school interests" is vested exclusively in the school committees. The plaintiffs' reliance upon this court's decision in *Dawson v. Clark,* 93 R.I. 457, 176 A.2d 732 (1962), in support of their claim that the Cranston School Committee did not have legislative authority to delegate rule-making power over interscholastic sports to the league is misplaced. While it is true that in *Dawson* this court held that § 16–2–18 should be strictly construed, plaintiffs appear to have overlooked our decision in *Belanger v. Matteson,* 115 R.I. 332, 352–53, 346 A.2d 124, 136 (1975). In *Belanger,* calling for a more liberal reading of § 16–2–18, this court held that "[w]hen in 1975 we look at § 16–2–18's language describing the committee's control and management of the school system, we must keep in mind that this statute was passed shortly after the turn of the century (1903) * * *." *Id.* at 352, 346 A.2d at 136. Moreover, because of the type of relationship that exists between the Cranston School Committee and the league, we do not believe that § 16–2–16 and § 16–2–18 directly relate to the instant controversy. The league is a voluntary nonprofit association whose membership consists of school principals who chose to become members. Certainly, no principals are under any obligation to join the league. Article I of the league Rules and Regulations states as the league's purpose "to maintain, improve and raise the athletic standards in the participating schools."

■ It has been well established that there should be no judicial interference with the internal affairs, rules and by-laws of a voluntary association unless their enforcement would be arbitrary, capricious or constitute an abuse of discretion. *See, e.g., Robinson v. Illinois High School Association,* 45 Ill.App.2d 277, 286, 195 N.E.2d 38, 43 (1963), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555, *reh. denied,* 380 U.S. 946, 85 S.Ct. 1022, 13 L.Ed.2d 966 (1965); *David v. Louisiana High School Athletic Association,* 244 So.2d 292, 293–94 (La.App.1971); *Crandall v. North Dakota High School Activities Association,* 261 N.W.2d 921, 926 (N.D.1978); *Caso v. New York State Public High School Athletic Association,* 78 A.D.2d 41, 48, 434 N.Y.S.2d 60, 65 (1980). When such rules and by-laws are reasonable, they become binding upon the association members. *Crandall v. North Dakota High School Activities Association,* 261 N.W.2d at 926. Where such rules are reasonable and in keeping with public policy, there will be no judicial interference with them. *Mahan v. Agee,* 652 P.2d 765, 767 (Okla.1982).

■ We find that the league's transfer rule is not arbitrary or capricious on its face. It was obviously designed to prevent the problems of school-jumping and the recruitment of high school athletes. Consequently, finding that the rule reasonably relates to its designed purpose, the league may bind its members to it, and we will not interfere with its implementation. However, plaintiffs contend that even though the rules may not be arbitrary or capricious, the enforcement of said rules is violative of the equal-protection and due-process provisions of the Rhode Island Constitution.

## A

### Equal Protection

■ The United States Supreme Court has held that an individual's right to education is not a fundamental right requiring the application of strict judicial scrutiny. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 29–39, 93 S.Ct. 1278, 1295–1300, 36 L.Ed.2d 16, 40–47 (1973). While we recognize that participation in interscholastic athletics is an integral part of one's educational process, certainly it is not deserving of a more heightened form of scrutiny than the right to education itself. It is well settled that there is no constitutionally protected right to participate in interscholastic athletics. *Albach v. Odle,* 531 F.2d 983, 984–85 (10th Cir.1976); *Mitchell v. Louisiana High School Athletic Association,* 430 F.2d 1155, 1158 (5th Cir.1970); *Blue v. Universi-*

**408**

ty Interscholastic League, 503 F.Supp. 1030, 1035 (N.D.Texas 1980). Nor are plaintiffs members of a suspect class. *See Menke v. Ohio High School Athletic Association,* 2 Ohio App.3d 244, 245, 441 N.E.2d 620, 623 (1981). Accordingly, under the United States Constitution the transfer rule must rationally relate to its intended purpose. *See Denis J. O'Connell High School v. Virginia High School League,* 581 F.2d 81, 84 (4th Cir.1978), *cert. denied,* 440 U.S. 936, 99 S.Ct. 1280, 59 L.Ed.2d 494 (1979). We similarly interpret the equal-protection clause of the Rhode Island Constitution. *See Boucher v. Sayeed,* R.I., 459 A.2d 87, 91 (1983).

 We believe that the transfer rule in question is a rational method of dealing with the very real problems associated with the recruitment of high school athletes by coaches and the school-shopping and school-jumping that goes on by some student athletes. Furthermore, while we recognize that the rule imposes a hardship on some student athletes, we find that the transfer rule does bear a rational relationship to the purposes it was intended to implement. Accordingly, we find that the transfer rule does not violate the equal-protection clause of the Rhode Island Constitution.

B

*Due Process*

 With respect to whether enforcement of the rule amounts to a denial of due process under the Rhode Island Constitution, we need not answer this question. We have held on several occasions that the due-process clause of our state constitution, art. I, sec. 10, applies only to the rights of individuals involved in criminal prosecutions and not civil actions. *Rhode Island Turnpike & Bridge Authority v. Bethlehem Steel Corp.,* R.I., 446 A.2d 752, 757 (1982); *Twomey v. Carlton House of Providence, Inc.,* 113 R.I. 264, 271, 320 A.2d 98, 101 (1974); *Avella v. Almac's Inc.,*

100 R.I. 95, 99–102, 211 A.2d 665, 668–70 (1965).

Accordingly, having found that plaintiffs enjoy no rights under the due-process clause of our state's constitution, we find that public schools may agree to comply with the rules promulgated by the Rhode Island Interscholastic League governing participation in interscholastic sports.

The plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court.