DECISION
This case is before the Court on Claimants' Petitions for an Order directing the Receiver of Heritage Loan and Investment Company (the "Receiver") to show cause why the North American Laborers' Defense League's ("NALDL") and Emmanuele DiMundo's ("DiMundo") allowed interest claims should not be paid as part of NALDL and DiMundo's priority claim under G.L. 1956 (1991Reenactment) § 19-15-7(a)(1). The Receiver opposes the petitions and brings an appeal of the decisions of the Special Master, as provided under G.L. 1956 (1985 Reenactment) § 8-2-11.1(d),
requiring the Receiver to pay the interest on both claims. NALDL and DiMundo ("claimants") seek to recover interest accrued on their accounts from January 25, 1991, as ordered by the Master.
I
The events leading up to this case have a long and complex history. Summarized briefly, the facts are as follows:
Following the failure of a number of RISDIC-insured financial institutions in the State of Rhode Island, the Governor ordered the closing of these institutions, not including Heritage Loan and Investment Company (Heritage), on January 1, 1991. The Heritage Receivership commenced on November 18, 1990, although Heritage did not close until January 25, 1991. Although Heritage was not subject to the original Depositor's Economic Protection Corporation (DEPCO) statute, G.L. 1956 (1991 Reenactment) §42-116-1 et al., which passed in 1991, the General Assembly amended the statute in 1992 to subject Heritage to the benefits of the DEPCO statute and to allow valid depositors to be paid in the same manner as the depositors of other formerly RISDIC-insured institutions. Heritage and its resultant Receivership were and are insolvent, and the only way Heritage depositors could be paid was through DEPCO. There have been no available assets in the Receivership for over three years.
On February 5, 1992, an Order issued by Mr. Justice Krause authorized the Receiver to make an interim distribution to various former Heritage depositors as set forth in an appendix to the Order. Because of questions raised as to the unusual nature of accounts in the names of NALDL and DiMundo, these parties did not receive any interim distribution of their funds on deposit at Heritage while hearings were conducted to determine the legitimacy of their claims. NALDL and DiMundo objected to this interim distribution, but did not appeal the Order.
As a result of an Order entered on February 12, 1992, by Mr. Justice Krause, Special Master William J. McAtee was appointed as Master in the Receivership for the purpose of hearing and determining the claims filed with the Receiver.
On May 29, 1992, the Heritage Receiver filed an Application for Authority to Enter into Asset Purchase Agreement, the DEPCO/Receiver Agreement. Following a hearing on the matter, and receiving no objection to the Application from NALDL or DiMundo, Mr. Justice Krause approved the application. On June 22, 1992, Mr. Justice Krause entered a Final Order and Judgment approving the transfer of Heritage assets to DEPCO. Under this agreement, DEPCO assumed certain deposit liabilities of Heritage as of the Receivership date, November 18, 1990, including interest due up to but not after that date.
On April 13, 1994, Master McAtee issued an Order and Judgment for DiMundo entitling him to $77,424.24, the amount due from his deposit, plus costs and interest at the rate of 12% per year from January 25, 1991. The Master issued a similar Order and Judgment for NALDL on May 19, 1994, allowing its full deposit amount of $420,000 plus interest at the rate of 12% per year from January 25, 1991.
DEPCO issued checks to DiMundo on June 10, 1994, for $77,424.24, and to NALDL on June 22, 1994, for $420,000. Checks did not issue for payment of interest accrued on the accounts.
II
The claimants seek to sustain the Master's Orders allowing them interest on their accounts from the date of the closure of Heritage. They argue, first, that they are entitled to that interest payment and, second, that the Receiver may pay the interest as a priority administrative expense, as authorized by §19-15-7(a)(1).
Claimants contend that the Receiver treated them unequally and unfairly because he has not paid them the amount of their allowed interest claims nor an interim distribution as received by certain other depositors similarly situated. Despite a lack of evidence to sustain the Receiver's challenge to payment of NALDL and DiMundo's claims, he pursued a hearing before the Master which resulted in payment of their deposit funds two years later than other depositors. Effectively, they argue, the Receiver used their money in order to pay other depositor's claims with no greater priority than their own. Claimants maintain that the Court can only compensate for this unreasonable delay of their claim by allowing them payment of interest as ordered by the Master.
Recognizing that the Receiver has no assets with which to pay the interest claims, the claimants argue that he should pay the interest as an administrative expense, as allowed under §19-15-7(a)(1). This statute sets out a list of priorities which a receiver must follow in distributing a corporation's assets, including expenses, liabilities, and claims. Section19-15-7(a)(1) states:
 First, reasonable administrative expenses as allowed by such court in connection with the administration of the receivership estate, including (without limitation) payment of any loans, together with interest thereon, obtained by the receiver with the approval of the court to fund the operations of the receivership estate and the administration of the receivership proceeding, repayable only from the assets in such estate.
Claimants argue that the phrase "without limitation" vests the Court with wide discretion to allow interest payments as an administrative expense. Interest payments should receive a high priority because of the deference due an Order of the Special Master and because only such payment will rectify the unfair treatment accorded these claimants. The Court should therefore exercise its discretion, they conclude, to allow the interest payments as an administrative expense.
The Receiver counters that the claims for interest have no merit, and the Court should overturn the Master's Order for such payment. Even if the claims did have merit, he argues, the Receiver is without funds to pay such claims, and these interest payments do not qualify as an administrative expense under §19-15-7(a)(1).
The Receiver relies on Mr. Justice Krause's June 22, 1992 Order transferring Heritage's assets to DEPCO. This Order transferred deposit liabilities and interest, up to the date of commencement of the Receivership on November 18, 1990, but not beyond that time, from the Receiver to DEPCO. The Receiver notes that neither NALDL nor DiMundo objected to that Order at the time. In compliance with the Order, the Heritage Receivership, already insolvent, transferred all remaining Heritage assets to DEPCO. The claimants have released DEPCO, he says, from liability for interest. Following the Master's Orders dated April 13 and May 19 of 1994, DEPCO paid the deposit amounts due NALDL and DiMundo.
The Receiver further contends that it treated the claimants equally and fairly in relation to other depositors. A reasonable investigation of unusual circumstances in the two accounts delayed payment of their deposit amounts. The Receiver carried out the interim distribution of funds to certain depositors in compliance with Mr. Justice Krause's February 5, 1992 Order. In fact, he asserts, claimants seek to be the only depositors paid interest after the date Heritage was petitioned into Receivership.
Even assuming the claims for interest had merit, the Receiver argues, there are no funds available to make such payment. The Receiver has no assets and has been insolvent for several years. The Receiver neither paid the interest amounts nor appealed that part of the Master's Order because, aware that no funds were available for such payment, he considered such appeal needless. Additionally, the Receiver states, the appeal process at that time was not clear, for it was only established later, on July 1, 1994, by Administrative Order 94-12.
Realizing that the Receiver no longer held any assets from Heritage, the claimants shifted their position to argue that the Court should allow their claims as a priority administrative expense. The Receiver opposes this on two grounds. First, Mr. Justice Krause issued an Order of Notice on May 28, 1992, barring any claims of administration entitled to priority under §19-15-7(a)(1) filed after June 10, 1992. The claimants did not file such request until 1995. Second, it is clear from the statute that a Receiver may pay administrative expenses only out of the corporation's assets, now fully depleted. Further, no cases support the claimant's argument that a Court has wide discretion which would allow it to order interest payments as an administrative expense.
III
The Court finds that the Receiver did not treat NALDL and DiMundo unequally nor unfairly in relation to other depositors, and accordingly no grounds exist to compensate them through payment of interest. The Receiver's actions, with respect to the deposit liabilities incurred by Heritage of the two claimants, have complied in all respects with Mr. Justice Krause's June 22, 1992 Order approving the Asset Purchase and DEPCO/Receiver Agreements. It is clear that, under these Agreements, DEPCO assumed certain deposit liabilities of Heritage as of the Receivership date, November 18, 1990, including interest due up to but not after that date. Checks issued to the claimants fulfill DEPCO and the Receiver's obligations with regard to their deposits.
The doctrine of "law of the case" provides that:
 ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling. Salvadore v. Major Electric and Supply, Inc., 469 A.2d 353, 354-5 (R.I. 1983), citing Payne v. Superior Ct., 78 R.I. 177, 80 A.2d 159, reh'g denied, 78 R.I. 188, 82 A.2d 167 (1951).
Mr. Justice Krause's orders thus bind this Court unless a change in the facts or law of the case warrant review of prior orders. Claimants have not presented such a case here.
The Receiver had no obligation to treat all depositors alike so far as time of payment is concerned. In fact, the Receiver had a duty to ensure that each depositor had a legitimate claim to funds from Heritage. He acted well within his authority to pursue an investigation of accounts, like those of these claimants, which appeared unusual. Given the state of the records and finances of Heritage, he would have been remiss in his duties to the taxpayers of Rhode Island, who were providing assets to DEPCO to pay depositors' claims, had he paid out such account monies without a thorough investigation and consideration of any irregularities.
Similarly, the Receiver acted in compliance with Mr. Justice Krause's February 5, 1992 Order which authorized interim distributions to certain depositors, not including the claimants. At that time, while depositors of other failed institutions had received access to most of their deposits, the DEPCO statute did not cover depositors of Heritage. Any depositors with a clear right to monies deposited in Heritage accounts were by that time surely entitled to such interim distribution. The claimants cannot now challenge the substance of the two orders on which the Receiver relied to perform his functions. See Beirne v. Barone,529 A.2d 154, 157 (R.I. 1987) and Hebert v. Ventetuolo,480 A.2d 403, 405 (R.I. 1984), applying principles of res judicata. There are, therefore, no grounds on which to justify payment of interest on the claimants' deposits, contrary to the prior Orders of this Court.
Claimants argue that the Receiver effectively borrowed from their deposit money to pay other depositors in this interim distribution. This is factually incorrect. As Heritage was insolvent from the time the Receiver took over its finances, he never had money from existing depositors' accounts to utilize in paying back depositors' monies. Funds for the interim distribution came from DEPCO resources, including bonds and sales tax revenue.
Section 19-15-7(a)(1) provides that the Receiver's administrative expenses receive first priority in distributing money from the failed corporation's assets. This section does not permit this kind of interest payment as an administrative expense. The Receiver no longer has access to any assets from the corporation, yet the statute specifies that such expenses are repayable only from the assets of the corporation. Moreover, interest payments do not logically fit within the scope of administrative expenses as described in the statute. Though the statute does not present an exhaustive list of expenses allowed in connection with the administration of the Receivership, it is clear that they include only expenses incurred by the Receiver, himself, in carrying out his duties. The Receiver did not use these claimants' funds as a source of assets, as if by a loan, to pay other claimants. Other claimants were paid out of DEPCO assets. The Court does not find any authority given by the plain language of the statute to allow interest as an administrative expense of the Receiver.
Even if claimants could establish an equitable right to interest on their deposits, the Receiver retains no monies with which he could pay such an expense. The claimants have not disputed that the Receiver has no funds remaining from Heritage's assets. The Receiver could only make such payment if the interest were considered a priority administrative expense and could therefore obtain the funds from DEPCO. The claimants suggest that the Court could award interest money to them as a penalty for needless delay in refunding their deposits. Such a recourse is not available to this Court, even in light of the Supreme Court's Order in Mulvaney v. Napolitano, No. 94-277-A (R.I. May 25, 1995), because the delay was not "an egregious refusal or failure to pay a judgment for an extended period after such judgment has become final."
Finally, even if interest payments qualified as an administrative expense, Mr. Justice Krause's Order of Notice, issued May 28, 1992, bars claimants from filing a request for administrative expenses as provided for under § 19-15-7(a)(1)
after the date of June 10, 1992. An orderly distribution of claims deriving from the failure of Heritage will not permit such a claim for an administrative expenditure at this late date.
IV
The claimants' Petitions for an Order directing the Receiver to show cause why the interest claims of NALDL and DiMundo should not be paid as a priority administrative claim are denied. That part of the decision of the Special Master requiring the Receiver to pay the interest on both claims is stricken. The Receiver will present an appropriate judgment for entry on notice to the parties.