[Civ. No. 33966. First Dist., Div. Two. Jan. 9, 1975.]

CABRILLO COMMUNITY COLLEGE DISTRICT OF SANTA CRUZ COUNTY et al.,
Plaintiffs and Respondents, v.
CALIFORNIA JUNIOR COLLEGE ASSOCIATION et al.,
Defendants and Appellants.

**COUNSEL**

Downey, Brand, Seymour & Rohwer, Richard G. Worden and Stephen F. Boutin for Defendants and Appellants.

Howard E. Gawthrop, County Counsel, and Gordon C. Roberts, Jr., Assistant County Counsel, for Plaintiffs and Respondents.

**OPINION**

**ROUSE, J.**—Defendant, California Junior College Association (hereafter "Association")[1] appeals from a judgment granting plaintiffs Cabrillo Community College District of Santa Cruz County, Donald Gatz, Joseph Gatz and Steve Donohue (students enrolled at the college and members of its football team), a permanent injunction and declaratory relief.

The Association is a private, voluntary, nonprofit corporation whose membership consists of 95 public community colleges, including plaintiff college and three private community colleges in California. One of the

---

[1]Also named as defendants were Lloyd Younger, a member of the executive committee of the Association, and Robert Annand, the chairman of the Association's athletic committee. All three defendants will hereafter be collectively referred to as "defendant" or "Association."

Association's primary responsibilities is the regulation and supervision of athletic competition among its member colleges.[2] Accordingly, on May 19, 1972, the Association, acting through one of its standing committees, the State Athletic Committee, amended two sections of the State Athletic Code which had been adopted in 1967. The two sections in their amended form provide as follows: "*Section 6.031.* A student 18 years of age or older who is not residing with his parents may establish eligibility through the passing of two semesters or three quarters of academic work in the community college serving that area, such work to include a minimum of ten units plus physical education (if required) each semester or quarter. This student athlete shall have two years of eligibility upon verification and approval of the conference." "*Section 6.032.* A student 18 years of age or older who is not residing with his parents may be granted eligibility provided he has resided continuously in the district of the community college where he seeks eligibility for a period of at least two calendar years. This student athlete shall have two years' eligibility upon verification and approval of the conference."[3]

The trial court found that the purpose of the State Athletic Code sections 6.031 and 6.032 is the prevention of proselytizing or the soliciting of a resident of a particular community college district to enroll and engage in interscholastic athletics in another community college district located within California.

Neither the plaintiff college district nor any of the other four public school members of the Coast Conference has complied with the residency requirements imposed by sections 6.031 and 6.032 since they were adopted.

In response to such noncompliance, the Association adopted a resolution that would have required the plaintiff college district and all other public school members of the Coast Conference to comply with every standard for individual eligibility set forth in the Association's athletic code. The Association set October 20, 1972, as the deadline for member colleges to either conform to the eligibility requirements or be barred from further athletic competition with complying member institutions.

---

[2] The trial court concluded as a matter of law that "The regulatory activities of the [Association] in the area of athletics constitutes State action and is therefore subject to the statutes of the State of California and any limits imposed by the Constitutions of the United States and the State of California."

[3] At oral argument we were told that these two rules have been recently revised; however, neither counsel was able to advise the court regarding the nature or purpose of such revision.

Plaintiff college did not comply with the above requirements. Hence, on November 21, 1972, the State Athletic Commission declared that the plaintiffs were ineligible to participate in any athletic competition with complying members of the Association.

On November 22, 1972, plaintiffs filed a complaint for temporary, preliminary and permanent injunctive relief restraining the enforcement of sections 6.031 and 6.032 of the Association's regulations and for declaratory relief declaring these regulations to be invalid.

The trial court issued a temporary restraining order and a preliminary injunction on November 22, 1972 and January 9, 1973, respectively. On May 9, 1973, the superior court ordered that defendant be permanently enjoined. In its decision, the court found that the Association's regulations were violative of the laws of the State of California, and the United States and California Constitutions. Judgment was entered in favor of plaintiffs and against defendant on June 25, 1973.

There are two issues presented on appeal. One is whether or not the Association's regulations, sections 6.031 and 6.032, are violative of California state law. The other is whether such regulations violate the equal protection clause of both the California and United States Constitutions.

It should be noted that the constitutional or "equal protection" challenge to the above two regulations was specifically dealt with in the lower court's opinion and stressed by counsel in their briefs on appeal. We conclude, however, that this court need not reach this constitutional question since there are other grounds available and dispositive of the issues which have been raised in this case.

The California Supreme Court, in *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1], is authority for the well reasoned principle that issues of constitutionality should not be met unless "absolutely necessary": "It has heretofore been considered against the policy of this court (and of courts of last resort generally) to reach out and unnecessarily pronounce upon the constitutionality of any duly enacted statute. At least as early as *Estate of Johnson* (1903), 139 Cal. 532, 534 [73 P. 424, 96 Am.St.Rep. 161], this court said, 'A court will not decide a constitutional question unless such construction is absolutely necessary' [citation] and as recently as *Hurd* v. *Hodge* (May 3, 1948), 334 U.S. 24 [68 S.Ct. 847, 92 L.Ed. 1187], the United States Supreme Court in

determining one of the racial restriction cases said: 'Upon full considera-tion, however, we have found it unnecessary to resolve the constitutional issue which petitioners advance . . . .' . . . 'It is a well-established principle that this Court will not decide constitutional questions where other grounds are available and dispositive of the issues of the case. Recent expressions of that policy are to be found in *Alma Motor Co.* v. *Timken-Detroit Axle Co.* [1946], 329 U.S. 129 [67 S.Ct. 231, 91 L.Ed. 128]; *Rescue Army* v. *Municipal Court* [1947], 331 U.S. 549 [67 S.Ct. 1409, 91 L.Ed. 1666].' " (See also *People* v. *Barton* (1963) 216 Cal.App.2d 542 [31 Cal.Rptr. 7]; *Whitson* v. *City of Long Beach* (1962) 200 Cal.App.2d 486 [19 Cal.Rptr. 668].)

■  The first issue on appeal is whether the durational residency requirements of sections 6.031 and 6.032 of the State Athletic Code violate state law.

The California Education Code includes specific statutes which govern the establishment of and admissions to the public community colleges of this state. (Div. 18.5, ch. 3, art. 1, § 25500 et seq. of the Ed. Code.) Section 25503 of the Education Code states that a community college must admit *any* high school graduate. Section 25505.7 amplifies the above by stating that a community college "shall admit" any eligible student as defined by section 25503, even though that person is not a resident of the specific community college district in which he or she seeks admission. Thus, according to the Education Code, a high school graduate need not be a resident of a particular college district in order to be admitted to that district's community college educational program.

Further, California has given new adult status to 18-year-olds: anyone 18 years of age may establish his residence independent of his parents. (Stats. 1971, ch. 1748; Ed. Code, §§ 22846, 22847 and Gov. Code, §§ 243, 244.) In a recent California decision, *Lev* v. *College of Marin* (1971) 22 Cal.App.3d 488 [99 Cal.Rptr. 476], the court held that a person over the age of 18 years may establish his own residence and attend the community college of his choice at that residence.

Thus, it appears that California law is quite clear that any high school graduate shall be admitted to the community college of his or her choice irrespective of the length of time that student resides in a particular community college district.

The question, then, is whether the Association may impose additional residency requirements upon students who wish to participate in its

member community college athletic programs after they have already been duly admitted to a member institution.

An individual community college district derives its power from the Legislature. Community colleges have only as much power as the Legislature gives them. (43 Cal.Jur.2d, Rev., § 61, pp. 493-495.) In *Ellis* v. *Board of Education* (1945) 27 Cal.2d 322, 325 [164 P.2d 1], the court stated that a school district may not promulgate rules which are inconsistent with state law.

Those community colleges which are members of the Association have invested the Association with power to regulate the athletic programs of their colleges, and, in so doing, they have delegated authority to the Association to regulate certain programs. However, these colleges can only delegate as much power as they themselves are given by the Legislature. Therefore, if a community college is prohibited from denying a person admission to its education program solely on the basis of the amount of time that person has lived in its district, the Association, as an agent of the community college, cannot deny a person admission to participate in a school's athletic program solely on the ground that he or she has failed to meet residency requirements prescribed by the Association.

Another, and somewhat crucial, question which must be answered is whether being admitted to a community college athletic program is tantamount to being admitted to any other educational program of that college.

Section 25516 of the Education Code prescribes the course of study for community colleges as follows: "The course of study for two-year community colleges shall be designed to fit the needs of pupils of the 13th and 14th grades and may include courses of instruction designed to prepare for admission to the upper division of higher institutions of learning and such other courses of instruction designed to prepare persons for agricultural, commercial, homemaking, industrial and other vocations, and such courses of instruction as may be deemed necessary to provide for the civic and liberal education of the citizens of the community."

The trial court concluded that interscholastic athletics are part of the total educational program currently offered by the California Community Colleges, including Cabrillo Community College. In its opinion, the lower court stated: "The question then arises whether participation in

intercollegiate athletics is part of the educational opportunities offered in community colleges. Whatever the relevance of football and similar athletic contests may be to the function of universities dedicated to the pursuit of knowledge and enlightenment, the purposes of community colleges are broader. The legitimate aims of the latter include not only preparation for institutions of higher learning but also vocational training. Education Code section 25516. And there can be no question that participation in intercollegiate athletics is useful if not necessary for students planning careers in health, recreation or physical education, seeking athletic scholarships or employment at summer camps and awaiting 'discovery' by professional scouts. It follows that at community colleges, participation in intercollegiate athletics is part of the educational program."

In *Behagen* v. *Intercollegiate Conference of Faculty Rep.* (D. Minn. 1972) 346 F.Supp. 602, 604, the court observed that, while "big time" college athletics may not be a "total part of the educational process," as are athletics in high school, nonetheless the opportunity to participate in intercollegiate athletics is of substantial economic value to many students.

Also, it is interesting to note that in his testimony before the court, the chairman of the Association's committee on athletics, Mr. Annand, "emphatically" agreed that athletics in community colleges were a vital part of the educational program offered at those colleges.

The record demonstrates substantial facts for supporting the trial court's conclusion as to the place of interscholastic athletics in the community college educational curriculum. Since athletics in the community college are analogous to other educational offerings therein, we hold that it would violate state law to exclude a student from participating in a community college athletic program solely based on durational residency grounds. Thus, sections 6.031 and 6.032 violate state law.

On this point, defendant contends that admission to a community college does not grant a student an "open ticket" to participate, without qualification, in every facet of the community college curriculum. Defendant suggests that by declaring its rules violative of state laws, this court would be implying that upon matriculation a student receives an absolute right to partake in any community college offering, regardless of his qualifications, abilities, or attitudes. Defendant's argument is without merit. A college has the authority to prevent a student from participating in the college orchestra if that student cannot play a note of music.

Similarly, a college football coach can certainly decide not to put a football player on the starting lineup if that student could not play football. However, we hold that a community college may not prevent a student from trying out for the football team or the college orchestra merely because that student has not lived in the college district for a particular period of time.

Our obligation is to insure that students are *admitted* to community colleges according to state laws. Once students are duly enrolled in college, this court recognizes that each student must realize his or her own level of ability or talent.

The judgment is affirmed.

Taylor, P. J., and Kane, J., concurred.