[Civ. No. 58869. Second Dist., Div. Two. Sept. 2, 1981.]

PAULINE C. McCOURTNEY et al., Plaintiffs and Respondents, v.
KENNETH CORY, as State Controller, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and John J. Crimmins, Deputy Attorney General, for Defendant and Appellant.

Stroock & Stroock & Lavan, William H. Levit and Margaret A. Nagle for Plaintiffs and Respondents.

Fredric D. Woocher, Lucas Guttentag and Carlyle W. Hall, Jr., as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

FLEMING, J.—Plaintiffs, who are surviving spouses of deceased judges, obtained a declaratory judgment from the superior court against the Controller of the State of California to require payment for life of their allowances as surviving spouses, even though the provisions of the Judges' Retirement Law which authorized their allowances specify termination of the allowances on remarriage. Plaintiffs successfully argued that because other provisions of the Judges' Retirement Law authorize allowances for other classes of surviving spouses for life, termination of their spousal allowances on remarriage is an invalid discrimination against marriage and a violation of the equal protection and due process clauses of the state and federal Constitutions. Defendant Controller has appealed.

The evolution of the Judges' Retirement Law (Gov. Code, § 75000 et seq.) falls into three phases.

1. In 1953 the present Judges' Retirement Law was adopted, which provided an allowance for a retiring or disabled judge of half the salary of his office. (Gov. Code, § 75032.) No allowance was provided for a surviving spouse. Later that year a provision was added allowing a retiring or disabled judge to apply the actuarial equivalent of his retirement allowance to a lesser optional settlement payable to the judge for life and thereafter to his surviving spouse for life. (Gov. Code, §§ 75070, 75071.)

2. In 1959 judges' retirement benefits were increased, and for the first time an allowance was provided for a retiring judge's surviving spouse. A judge who qualified for retirement by reason of age and service became entitled to an allowance of 65 or 75 percent of the salary of his office (Gov. Code, § 75076). An allowance of half that amount was provided for his surviving spouse, which would continue until the death or remarriage of the surviving spouse (Gov. Code, § 75077). Similar benefits were provided for a judge retiring for disability and for his surviving spouse. (Gov. Code, §§ 75060, 75077.) Earlier, the Legislature

had authorized an allowance for the surviving spouse of a judge who dies in office while eligible for retirement, an allowance of half the eligible retirement allowance of the deceased judge, which would continue until the death or remarriage of the surviving spouse. (Gov. Code, § 75104.4.) In 1961 the surviving spouse of a deceased judge with 10 to 20 years service became entitled to an allowance based on the length of the deceased judge's service, an allowance which would continue until the death or remarriage of the surviving spouse (Gov. Code, § 75091).

Thus, apart from optional settlements under which a retiring judge could apply the actuarial equivalent of his retirement allowance for the benefit of himself and his spouse, the statutes consistently limited the duration of an allowance for the surviving spouse of a retired, disabled, or deceased judge to the death or remarriage of the surviving spouse.

3. In 1968 the Legislature authorized an allowance for the surviving spouse of a judge who dies in office before accruing retirement benefits (Gov. Code, § 75093). Such a surviving spouse can elect to receive an allowance of 25 percent of the salary of the deceased judge's office. This legislation did not specifically terminate such an allowance on remarriage. In 1973 the Judges' Retirement Law was further amended to authorize deferred retirement, under which a judge with five or more years of service could retire in advance of retirement age and on reaching retirement age thereafter would receive an allowance based on his length of service (Gov. Code, § 75033.5). This legislation specifically provided that the surviving spouse of such a judge would receive an allowance for life of half the benefits payable to the judge.

To summarize the foregoing history, originally California provided no allowances for surviving spouses of retired, disabled, or deceased judges. In 1959 spousal allowances were established for surviving spouses of retired or disabled judges, which would continue until the death or remarriage of the survivor. In 1968 benefits were authorized for the surviving spouse of a judge dying in office, irrespective of the judge's eligibility for retirement benefits (Gov. Code, § 75093), and in 1973 deferred benefits were authorized for a judge retiring with five or more years of service and for the judge's surviving spouse. (Gov. Code, § 75033.5.) In the latter two instances allowances to surviving spouses would continue for life.

Plaintiffs, who are or were beneficiaries under the earlier judicial retirement legislation, argue that adoption of the later statutes authoriz-

ing allowances to surviving spouses for life made invalid and unconstitutional those limitations of the earlier statutes which terminate or terminated their own spousal allowances on remarriage. Plaintiffs rely on two arguments. The limitations are (1) an invalid restraint on marriage, and (2) a denial of equal protection of the laws and of due process of law.

## I

### *Restraint on Marriage*

■ Plaintiffs argue, and the trial court agreed, that those provisions of the Judges' Retirement Law which terminate allowances to a surviving spouse on remarriage (Gov. Code, §§ 75077, 75091, 75104.4) have a chilling effect on the exercise of the right to marry and therefore amount to an unconstitutional restraint on the free exercise of marriage.

We are not persuaded that any genuine restraint on marriage is present here. ■ A constitutional right to marry undoubtedly exists, but the cases which have upheld that right deal with laws creating direct barriers against marriage. The most recent case, *Zablocki* v. *Redhail* (1978) 434 U.S. 374 [54 L.Ed.2d 618, 98 S.Ct. 673], struck down a statute which prohibited marriage by a person under court order to support a minor, unless that person obtained prior court authorization for the marriage by proving compliance with the support order and the unlikelihood of the minor's becoming a public charge. An earlier case, *Loving* v. *Virginia* (1967) 388 U.S. 1 [18 L.Ed.2d 1010, 87 S.Ct. 1817], held invalid Virginia's antimiscegenation statute. ■ These cases, however, are a far cry from that at bench, where the only restraint on marriage is the prospective loss of a spousal allowance from a prior marriage. In our view such a loss does not significantly or legally interfere with a decision to enter a new marital relationship. Directly in point is *Califano* v. *Jobst* (1977) 434 U.S. 47 [54 L.Ed.2d 228, 98 S.Ct. 95]. *Jobst* concerned a provision of the Social Security Act which terminated benefits to the child of a deceased wage earner if the child married, but continued benefits if the child married another beneficiary. The Act also contained a similar termination-upon-marriage provision and exception for surviving spouses of deceased wage earners. Under the act, the court noted, "[m]ost secondary beneficiaries are eligible only if they have not married or remarried" and "marriage or remar-

riage marks the end of secondary benefits." (434 U.S. at pp. 52, 53 fn. 8 [54 L.Ed.2d at p. 234].) While the court conceded that the statutory provision "may have an impact on a secondary beneficiary's desire to marry, and may make some suitors less welcome than others" (p. 58 [54 L.Ed.2d at p. 237]), it nevertheless declared that the provision was not invalid "simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby." (P. 54 [54 L.Ed.2d at p. 235].) The court distinguished the act's termination-of-benefits-on-marriage provision from those laws which violate the right to marry. The provision was neither "an attempt to interfere with the individual's freedom to make a decision as important as marriage" (p. 54 [54 L.Ed.2d p. 235]), nor an attempt to "foist orthodoxy on the unwilling by banning, or criminally prosecuting, nonconforming marriages," (p. 54, fn. 11 [54 L.Ed.2d p. 235]), as in *Loving* v. *Virginia, supra* 388 U.S. 1, at pp. 9-11 [18 L.Ed.2d 1010, at pp. 1016-1018]. Accordingly, the provision was valid.

In our view the remarriage provision of the Social Security Act upheld in *Jobst* is comparable to the remarriage provisions of the Judges' Retirement Law. The latter's provisions do not attempt to ban or restrict remarriage, nor do they significantly interfere with the exercise of that right. At bench, both sides sought to use factual data to prove or disprove the thesis that the remarriage rate for judges' widows with terminable allowances was less than the remarriage rate for widows in the general population. We find this statistical data inconclusive and inconsequential, both factually and legally, and we reject it as proof of the chilling effect on marriage of termination of a spousal allowance on remarriage.

To summarize in the language of *Zablocki* v. *Redhail* (1978) *supra*, 434 U.S. 374, only a statute which interferes "directly and substantially" with the right to marry is invalid. (P. 387 [54 L.Ed.2d p. 631].) "By reaffirming the fundamental character of the right to marry, we do not mean to suggest that every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny. To the contrary, reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." (P. 386 [54 L.Ed.2d p. 631].) In our view termination of the allowance of a surviving spouse on remarriage is a reasonable regulation which does not significantly interfere with the right to marry.

## II

### *Denial of Equal Protection and Due Process of Law*

■ Plaintiffs' other argument relies, primarily, on the equal protection clause and, secondarily, on the due process clause. In essence, plaintiffs claim that once provision has been made under any pension plan for life allowances for a particular category of surviving spouses, similar provision must be made for all other categories of surviving spouses. In our view this argument proves too much.

■ Under the equal protection clause we evaluate the merits of legislative classification in a cause such as this by the rational basis test—i.e., does the legislation meet the test of reasonableness? (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153].) Under the due process clause the test of legislative classification is whether the classification bears a rational relation to a constitutionally permissible objective. (*Williamson* v. *Lee Optical Co.* (1955) 348 U.S. 483, 491 [99 L.Ed. 563, 574, 75 S.Ct. 461].) The two tests are approximately the same, and the party challenging the classification has the burden of proving it unreasonable or irrational. (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 425-426 [6 L.Ed.2d 393.) The strict scrutiny test for which plaintiffs argue applies only when a legislative classification significantly infringes upon a fundamental right (*Kramer* v. *Union School District* (1969) 395 U.S. 621, 626 [23 L.Ed.2d 583, 589, 89 S.Ct. 1886]), which, as we have seen, is not the case at bench. (*Zablocki* v. *Redhail* (1978) 434 U.S. 374, 386-387 [54 L.Ed.2d 618, 630-631, 98 S.Ct. 673]; *Califano* v. *Jobst* (1977) 434 U.S. 47, 53-54 [54 L.Ed.2d 228, 234-235, 98 S.Ct. 95].) The comparable tests under California law are the same as those under federal law. The leading case, *Fair Political Practices Com.* v. *Superior Court* (1979) 25 Cal.3d 33 [157 Cal.Rptr. 855, 599 P.2d 46], expressly declares that the strict scrutiny test applies only if a law significantly interferes with the exercise of a fundamental right. "Although a fundamental interest may be involved, both the United States Supreme Court and this court have recognized that not every limitation or incidental burden on a fundamental right is subject to the strict scrutiny standard. When the regulation merely has an incidental effect on exercise of protected rights, strict scrutiny is not applied. (E.g., *Zablocki* v. *Redhail* (1978) 434 U.S. 374 [] [regulations affecting the right to marry]; *Califano* v. *Jobst* (1977) 434 U.S. 47 [] [same].)" (P. 47.) (To the same

effect, see *In re Flodihn* (1979) 25 Cal.3d 561, 567-568 [159 Cal.Rptr. 327, 601 P.2d 559].)

Accordingly, we use the standard of reasonableness and rationality to evaluate the constitutional validity of judicial pension benefits for the various categories of retired, disabled, and deceased judges and their surviving spouses. Over the past 30 years these benefits have progressively increased for both judges and their surviving spouses. During this period the Legislature has been required to devise equitable solutions for problems of full retirement, disability retirement, deferred retirement, and death in office. The Legislature has conscientiously, even generously, grappled with these problems, notwithstanding continued deficits in the Judges' Retirement System, which is presently less than one-third supported by contributions from judges' salaries (see Annual Report, Judges' Retirement System, Fiscal Year Ending June 30, 1980).

█ Plaintiffs' basic contention is that benefits given to one surviving spouse in one category must be given to all surviving spouses in all categories, that if the Legislature in dealing with a subsequent category of judicial retirees liberalizes benefits beyond those previously given to other and different categories of retirees, all categories become constitutionally entitled to the liberalized benefits. Plaintiffs' argument brushes to one side the fact that surviving spouses in different categories are differently situated, possess different histories, are credited with different contributions, and face different problems. Presumptively, the Legislature can treat these different categories in different fashion. Plaintiffs' argument also ignores the crucial fact that the overwhelming bulk of California legislation dealing with retirement benefits for public employees terminates allowances for surviving spouses on the spouses' death or remarriage. Such is the case with benefits for surviving spouses of legislators and constitutional officers (Gov. Code, § 9360.7), benefits for police and firemen (Gov. Code, § 50880), benefits for state patrol officers (Gov. Code, § 21263), benefits for miscellaneous state public employees (Gov. Code, § 21263.4 & 21263.5), death benefits under the public employees' retirement law (Gov. Code, § 21365.5), survivors' allowances for public employees (Gov. Code, §§ 21382 & 21382.1), benefits under the state teachers' retirement system (Ed. Code, §§ 23804 & 23805), and benefits for assassinated elected public officials (Lab. Code, § 4723). Clearly, the pattern of benefits in California for retired, disabled, and deceased state employees and other public employees is one of allowances to the surviving spouse which continue until

death or remarriage. A similar pattern is discernable for federal judges, for whose surviving spouses benefits have been progressively liberalized since 1954 (see former 28 U.S.C. § 375). All surviving spousal allowances, however, terminate on remarriage (28 U.S.C. § 376(h)(2)). When we consider retirement benefits for state and public employees as a whole, we see that judges would be elevated to a unique and preferred position among all other state and public employees if the court were to declare as a matter of constitutional law that surviving spouses of judges are constitutionally entitled to spousal allowances for life. If we were to accept plaintiffs' argument and purport to rectify an inequality among various categories of surviving spouses of retired, disabled, and deceased judges, we would create a massive inequality between benefits payable to surviving spouses of judges and benefits payable to surviving spouses of all other state and public employees.

To us it seems patently clear that a court cannot undertake to rewrite pension laws for the entire body of state and public employees merely to accommodate discrepancies, if such exist, among surviving spouses of various categories of retired, deceased, or disabled judges. It is the task of the legislature, not the courts, to accommodate and adjust the benefits for diverse groups of state and public employees to their different circumstances of employment, their different amounts of contribution, their different amounts of benefits, and their different actuarial evaluations. Obviously, increased benefits are desired by all groups of employees, and liberalization of benefits for surviving spouses is a laudable objective of public welfare. But as the court said in *Califano* v. *Jobst* (1977) *supra*, 434 U.S. 47, at page 57 [54 L.Ed.2d 228, at page 237]: "Congress could reasonably take one firm step toward the goal of eliminating the hardship caused by the general marriage rule without accomplishing its entire objective in the same piece of legislation. *Williamson* v. *Lee Optical Co.*, 348 U.S. 483, 489. Even if it might have been wiser to take a larger step, the step Congress did take was in the right direction ...." If in the above quotation we substitute the California Legislature for Congress, the language becomes directly pertinent to the present cause.

█ The remaining question is whether there is sufficient reasonableness and rationality in the classification of different allowances for different categories of surviving spouses to sustain the statutory scheme against equal protection and due process attacks. We believe there is. In *Califano* v. *Jobst, supra*, 434 U.S. 47, the court held that a rational basis existed for terminating benefits to certain dependents upon marriage

while continuing benefits to certain others. First, the court found that "[b]oth tradition and common experience support the conclusion that marriage is an event which normally marks an important change in economic status," (p. 53 [54 L.Ed.2d p. 234]) and that "it was rational for Congress to assume that marital status is a relevant test of probable dependency." (Pp. 53-54 [54 L.Ed.2d p. 235].) "Instead of requiring individualized proof on a case by case basis, Congress has elected to use simple criteria, such as age and marital status, to determine probable dependency. ... There is no question about the power of Congress to legislate on the basis of such factual assumptions. General rules are essential ... even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." (Pp. 52-53 [54 L.Ed.2d p. 234].) Since the distinction made by the act between married and unmarried persons is not irrational, "[t]he general rule, terminating upon marriage the benefits payable to a secondary beneficiary, is unquestionably valid." (P. 54 [54 L.Ed.2d p. 235].) Next, the court found that a rational basis existed for the exception which continued benefits in the instance of marriage between beneficiaries. The court declared "it was reasonable for Congress to ameliorate the severity of the [general rule] by protecting both spouses from the dual hardship which it effected" (p. 55 [54 L.Ed.2d p. 236]), and it interpreted the exception as a "reliable indicator of probable hardship."(P. 57 [54 L.Ed.2d p. 237].)

At bench, it cannot be said that the Legislature acted unreasonably or irrationally when it specified that the surviving spousal allowances created in 1968 (Gov. Code, § 75093) and those created in 1973 (Gov. Code, § 75033.5) would continue for the life of the beneficiary and not terminate on remarriage, as do other spousal allowances. ▇ "The legislature is not bound, in order to adopt a constitutionally valid statute, to extend it to all cases which might possibly be reached, but is free to recognize degrees of harm and to confine its regulation to those classes of cases in which the need is deemed to be the most evident." (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 833 [48 Cal. Rptr. 481, 409 P.2d 481].) ▇ In enacting section 75093 the Legislature authorized life allowances for surviving spouses of judges dying in office before becoming eligible for retirement benefits. The Legislature could have concluded that such surviving spouses formed an especially needy category, in that its members were required to face a catastrophic and traumatic event for which they may have been ill-prepared. Having so concluded, the Legislature was not required to eliminate from the Judges' Retirement Law the termination-on-mar-

riage provisions which affect other categories of surviving spouses. In enacting section 75033.5, the Legislature extended deferred retirement benefits to judges ineligible to retire for age and service and provided benefits for life to the surviving spouses of such judges. The Legislature could have reasoned that inasmuch as the benefits payable to the judge and his surviving spouse would often be less than the benefits paid on retirement for age and service, it would ameliorate the hardship of the lower payments by continuing the surviving spouse's allowance for life. ▮ These reasons need not be comprehensive, or all-conclusive, or even fully persuasive. Indeed the classification which they support may be imperfect, illogical, and unscientific. Yet "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." (*McGowan* v. *Maryland* (1961) 366 U.S. 420, 426 [6 L.Ed.2d 393, 399, 81 S.Ct. 1101].) ▮ Plausibly, the facts at bench provide a sufficiently reasonable and rational basis to justify different treatment of different categories of surviving spouses.

In closing, we again note that during the period in which the Legislature has been liberalizing retirement benefits, it has been dealing not merely with benefits for a single class and category of public employees, as for example spouses of judges who die in office, but with interests, contributions, and benefits for all public employees. Legislative action dealing with retirement benefits must navigate the channel between the shoals of unlimited demands and the reefs of limited funds. Rationalization of disability, death, and retirement benefits for various categories of public employees and their surviving spouses makes for a tortuous and difficult passage. If during the voyage discrepancies in retirement benefits surface among different categories of judges, or among different categories of public employees, or among categories of judges and categories of other public employees, arguments for revision of benefits for particular groups and categories must be addressed to the Legislature, which has the authority and responsibility to provide equitable treatment for all, not merely some, public employees.

The judgment is reversed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied September 22, 1981, and respondents' petition for a hearing by the Supreme Court was denied November 13, 1981.