[Civ. No. 68360. Second Dist., Div. Two. Apr. 4, 1984.]

MARILYN OWENS, Plaintiff and Appellant, v.
CITY OF SIGNAL HILL et al., Defendants and Respondents.

**COUNSEL**

Robert J. Davis for Plaintiff and Appellant.

Brown, Winfield & Canzoneri, J. Kenneth Brown, Thomas F. Winfield III and Charles V. Berwanger for Defendants and Respondents.

**OPINION**

**ROTH, P. J.**—Plaintiff Owens appeals from an order denying her request for an injunction against the enforcement of respondent City's Municipal Code chapters 5.16 and 5.17. Said ordinances were adopted on July 7, 1981. They regulate massage establishments and massage technicians. On February 23, 1982, Owens filed the complaint in this action and contends that certain sections of these chapters are unconstitutional.[1] We affirm the judgment.

The Circle Massage has operated a massage parlor in Signal Hill since 1970. In April 1979 Owens commenced to operate the Circle Massage

---

[1]In a parallel suit (SOC 64521) the City of Signal Hill (City) sought to enjoin the Circle Massage as a nuisance. On July 23, 1982, the court also granted the City's request for an injunction. Owens' appeal from the decision in that companion case is also before us. (2 Civ. 68156.)

which she asserts is "a legitimate massage establishment existing for the sole purpose of offering to the public for a price a comfortable and relaxing massage treatment."

Declarations of several undercover investigators reveal that each had been solicited for prostitution. Officer Abe Carter declared he was told "for $60 I'll give you the best blow job you've ever had"; the declaration of Deputy Paul George quotes a "masseuse" as saying, "Poor Sylvia, they arrested her for disorderly conduct and prostitution. I don't understand it, we don't screw here, just give head and hand jobs (acts of oral copulation and masturbation)." The record also shows that the Circle Massage's advertisements in the Hollywood Press feature photographs of nude women and promise "You will come and come and come," "every intimate fantasy fulfilled." Eleven arrests for prostitution were made at the Circle Massage in the year prior to the enactment of the ordinances in issue.

■ It is settled that, despite the statutory proscription (Civ. Code, § 3423), an action for injunctive relief is appropriate to challenge constitutionality of legislation (*Conover* v. *Hall* (1974) 11 Cal.3d 842, 850 [114 Cal.Rptr. 642, 523 P.2d 682]; *Ebel* v. *City of Garden Grove* (1981) 120 Cal.App.3d 399, 410 [176 Cal.Rptr. 312]), and an order denying such an injunction may be reviewed on appeal. (*O'Connor* v. *Superior Court* (1979) 90 Cal.App.3d 107, 110 [153 Cal.Rptr. 306].)

■ The thrust of Owens' argument is that the relevant provisions of City's Municipal Code violate her constitutional rights of due process and equal protection.[2] (U.S. Const. Amend. XIV; Cal. Const. art. I, § 7, subd. (a).) Violations of these rights are subject to the two tests, "rational relationship" and "strict scrutiny." The applicable test depends on the nature of the right infringed. If the law encroaches on a "fundamental right," inherent in which there is a compelling state interest, the strict scrutiny test applies. (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 914 [132 Cal.Rptr. 405, 553 P.2d 565].) When the state regulates economic and social relations, and no fundamental right is in issue, the law must be rationally related to a permissible state goal. (*Exxon Corp.* v. *Governor of Maryland* (1978) 437 U.S. 117, 124-125 [57 L.Ed.2d 91, 99, 98 S.Ct. 2207].)

Operation of a massage business is not a fundamental right. Such business is therefore subject to economic regulation which is reviewed under the ra-

---

[2]Owens also claims that the ordinances violate the state privileges and immunities clause. (Cal. Const., art. I, § 7, subd. (b).) The state Constitution's due process and privileges and immunities clauses are identical in scope with the federal due process clause. (*Gray* v. *Whitmore* (1974) 17 Cal.App.3d 1, 20 [94 Cal.Rptr. 904].)

tional relationship test. (*Brix* v. *City of San Rafael* (1979) 92 Cal.App.3d 47, 51 [154 Cal.Rptr. 647].)

■ Equal protection analysis, which is the same under the state and federal Constitutions (*Reece* v. *Alcoholic Beverage etc. Appeal Bd.* (1976) 64 Cal.App.3d 675, 679 [134 Cal.Rptr. 698]), is similar to due process analysis. Some classifications are "suspect," because they are rarely relevant to a legitimate governmental interest. Examples of such classifications are race, religion and alienage. (*New Orleans* v. *Dukes* (1976) 427 U.S. 297, 303 [49 L.Ed.2d 511, 517, 96 S.Ct. 2513].) These classifications are subject to strict scrutiny. (*University of California Regents* v. *Bakke* (1978) 438 U.S. 265, 291 [57 L.Ed.2d 750, 771, 98 S.Ct. 2733].) When no suspect class is involved, the equal protection clause is satisfied if the classification is rationally related to a permissible governmental purpose. (*People* v. *Milano* (1979) 89 Cal.App.3d 153, 165 [152 Cal.Rptr. 318].)

The distinction between massage parlors and other businesses does not create a suspect class. The same may be said of separating massage technicians from other classes of workers. Such distinction is not comparable to distinctions made on racial or religious lines. The contrast between the two is inherent and obvious.

The distinction between massage parlors and other businesses requires only a rational relationship between means and ends for the classifications at bench. If those ends are plausible and justifiable there is no constitutional defect. (*U.S. Railroad Retirement Bd.* v. *Fritz* (1980) 449 U.S. 166, 179 [66 L.Ed.2d 368, 378-379, 101 S.Ct. 453].) At bench City seeks to avert the danger of brothels masquerading as massage establishments. Obviously legislators may take into account the nature of the business to be regulated, and the reasonableness of the regulation depends on the nature of the business and the ease with which it can be diverted in whole or part to an unlawful business. Discouraging prostitution is a valid state interest. (*Brix* v. *City of San Rafael* (1979) 92 Cal.App.3d 47, 54 [154 Cal.Rptr. 647].)

■ Signal Hill Municipal Code section 5.17.030 requires any person applying for a massage technician permit to "furnish a diploma or certificate of graduation from an approved school wherein the method, profession and work of massage technicians is taught." This section demands that the school provide 200 hours of instruction while the student is in residence no less than 3 months. Such requirement bears a rational relationship to City's objective to discourage prostitution. The training requirement also is designed to minimize any danger to a customer seeking a massage. An ill-trained masseuse can cause injury to her client. It recognizes among other things that to be a competent professional masseuse requires serious study

and training. The ordinance on the subject will help ensure that those who work in massage establishments are competent masseuses.

Owens complains that the requirement of 200 hours in no less than 3 months is arbitrary. Nothing in the evidence supports that position. The City need not justify its training requirement as the best. It appears to be fair and reasonable. The same is true of Owens' argument that requiring an examination would be more reasonable than prescribing an education. Section 5.17.030 does not offend due process.

■ We find no violation of the equal protection clause. Appellant argues that persons who work in massage parlors are burdened with different and onerous requirements than are others who give a massage as part of other relationships, such as nurses and spouses. There is no comparison between the two. There is only a contrast. It is common knowledge which the evidence before us demonstrates that massage parlors are too often brothels in disguise.

Owens points out that California Administrative Code, title 5, section 19249 regulates massage instruction programs and argues state preemption of massage instruction requirements. We note however that Government Code section 51031, subdivision (b) explicitly permits cities to regulate the education and experience of massage personnel. We conclude that section 5.17.030 is valid.

Owens also challenges Municipal Code section 5.16.040, which states: "The administration of massages and operation of a massage establishment shall be permitted only between the hours of 9:00 a.m. and 11:00 p.m." *Brix* v. *City of San Rafael, supra,* 92 Cal.App.3d 47, upholds a similar city ordinance closing massage parlors between 10:30 p.m. and 7 a.m. "The city council could reasonably conclude that because an increase in criminal activity occurs in commercial establishments during the late evening and early morning hours, a restriction prohibiting business operation after 10:30 p.m. would serve to reduce the risk of illegal activity." (*Id.,* at p. 51.) Massage parlors as heretofore noted are often a locus of illegality, i.e., prostitution. Section 5.16.040 is constitutional.

■ Owens asserts that the City's Municipal Code sections 5.16.180 and 5.17.100 are unconstitutional ex post facto laws. Section 5.16.180 states:

*"Applicability of Regulations to Existing Licensed Massage Establishments.*

"All persons who possess an outstanding permit heretofore issued by the City to operate a massage establishment must apply for a permit and shall

be issued a license or permit within ninety (90) days of the effective date of this Chapter if they qualify under the provisions of this Chapter, and in any event any permits issued hereunder prior to the effective date of this ordinance shall be null and void upon the passage of ninety (90) days from the effective date hereof.

"As to any existing and properly licensed massage establishments as of the effective date of this ordinance, and pending the application and the issuance of or denial of a permit hereunder as above specified, the provisions of Sections 5.16.010, 5.16.020, 5.16.040, 5.16.050, 5.16.060, 5.16.070, 5.16.090, 5.16.200 and 5.16.210 shall apply to such existing establishments licensed under the terms of this ordinance prior to the amendments effected by this ordinance." Section 5.17.100 states:

*"Operative Date-Massage Technicians Licensed Under Prior Law*

"All previously licensed masseurs, masseuses or massage technicians by the City and whose license are in effect as of the date of this ordinance shall apply for and obtain a Massage Technician Permit hereunder within 90 days of the effective date of this Ordinance, and in any event permits issued prior to the effective date of this ordinance shall be null and void after the passage of ninety (90) days from the effective date hereof."

Sections 5.16.190(c) and 5.17.100(b) provide that violations of these respective ordinances may lead to criminal prosecution.

To be an ex post facto law the enactment must have retroactive effect. It must be "one which makes that criminal or penal which was not so *at the time the action was performed.*" (*People* v. *Perez* (1972) 24 Cal.App.3d 340, 345 [100 Cal.Rptr. 834].) (Italics added.) If the law penalizes only conduct occurring after its enactment it operates *prospectively* only, and is not ex post facto in nature. Failure to understand and honor this distinction would transform *every* newly enacted penal statute into an ex post facto law.

Section 5.16.180 requires compliance with various sections of the City's Municipal Code regulating the operation of massage parlors. It voids previously issued business permits. It does not punish failure to have had a permit before it was enacted. It does not punish past failures to abide by the specified sections. It has no ex post facto character.

Section 5.17.100 voids previously issued massage technician permits. The section does not create criminal liability for not having had a permit before it was enacted. It is *not* an ex post facto law.

■ Finally, Owens contends that these ordinances were enacted for an impermissible reason: to drive her enterprise out of business. It is true that discriminatory purpose will invalidate an otherwise valid law. (*Washington v. Davis* (1976) 426 U.S. 229 [48 L.Ed.2d 597, 96 S.Ct. 2040].) There is, however, no presumption of improper purpose. The burden of proof is on Owens. (*Arlington Heights* v. *Metropolitan Housing Corp.* (1977) 429 U.S. 252, 270 [50 L.Ed.2d 450, 468, 97 S.Ct. 555].) Owens simply makes bald charges. Nothing in the record points to anything in the legislative history, or in the legislation itself, to support her theory. We find no reason to doubt that the City's ordinances are intended to prevent prostitution. The judgment is affirmed.

Compton, J., and Gates, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 20, 1984.