[No. B011081. Second Dist., Div. Three. Jan. 16, 1986.]

KENT CONRAD STEFFES, a Minor, etc., Plaintiff and Appellant, v. CALIFORNIA INTERSCHOLASTIC FEDERATION et al., Defendants and Respondents.

**COUNSEL**

Levine, Krom & Unger and Tina S. Schuchman for Plaintiff and Appellant.

Patterson & Lucas, Andrew Patterson, Robert C. Miller, Timothy D. Lucas, De Witt W. Clinton, County Counsel, and Nina W. Phillips, Deputy County Counsel, for Defendants and Respondents.

## Opinion

### ARABIAN, J.—

#### Introduction

The principal question in this case of first impression is whether, under the California Constitution, the right to participate in interscholastic athletics is a "fundamental right."

#### Facts

Plaintiff and appellant, Kent Conrad Steffes, a minor, by his Guardian Ad Litem, Jackson T. Steffes (Steffes), appeals from an order of the trial court denying his petition for a preliminary injunction to restrain defendants California Interscholastic Federation; California Interscholastic Federation, Los Angeles City Section; Los Angeles City School District; William Honig, as Superintendent of Public Instruction; and Brentwood School (collectively defendants)[1] from enforcing a California Interscholastic Federation (CIF) rule under which Steffes was declared ineligible to participate in varsity level competition in basketball and volleyball at Palisades High School (Pali High) during the 1984-1985 academic year.

Defendant CIF is a statewide organization that was established to enact and enforce rules and regulations governing secondary school interscholastic athletics in the state of California. Defendant CIF, Los Angeles City Section, is a division of CIF with responsibility for administering interscholastic athletics in the Los Angeles City School District. Defendant Los Angeles City School District is responsible for maintaining Pali High and its athletic program. Defendant William Honig, the Superintendent of Schools for the Department of Education, is responsible for enforcing the rules and regulations necessary for the administration of California public schools. Defendant Brentwood School is a private school located in Los Angeles County, California.

Steffes spent his freshman and sophomore years at Brentwood School. During his sophomore year (the 1983-1984 academic year), Steffes participated in junior varsity cross-country and varsity basketball and volleyball. At the end of his sophomore year, Steffes' parents decided to transfer him to Pali High, the public high school for the area in which the Steffes' family home is located. Steffes was not encouraged nor recruited for athletics by any of the personnel at Pali High.

---

[1]William Honig and Brentwood School are not parties to this appeal.

Since Steffes transferred from Brentwood School to Pali High without a change of his parents' residence, CIF rule 214 (Rule 214) rendered him ineligible to participate in varsity athletics for one calendar year after his transfer.

Rule 214 provides: "A student who transfers from a school located in the United States, a U.S. Territory or U.S. military base (to be referred to as School A) to School B without a change of residence on the part of the parents or legal guardian from school attendance area A to school attendance area B shall be residentially eligible for all athletic competition, except varsity level competition in sports in which the student has competed in any level of interscholastic competition during the 12 calendar months preceding the date of such transfer, provided the athletic eligibility is approved by both principals of the schools involved. The student shall be ineligible for all sports for one calendar year in the event that either or both principals decline to approve athletic eligibility. The student shall become eligible under the rule after one calendar year from the date of first attendance at school B. Each CIF section shall establish rules and procedures to review an individual case in the event that either principal declines to approve such athletic eligibility, upon appeal by the student to the CIF section. Each CIF section may waive the ineligibility at varsity level provided the section establishes rules and procedures regulating same. This rule also applies to students 18 years of age or older."

According to Thomas E. Byrnes, Commissioner of the CIF, the purpose of Rule 214 is to "eliminate or minimize recruiting and school shopping."

Steffes filed an "Application for Residential Eligibility Form 214" with the CIF Los Angeles City Section to obtain a waiver of his ineligibility to participate in varsity level athletics at Pali High. In the application, Steffes stated that he had not been influenced to transfer schools for recruitment reasons. Despite this fact, the principal at Brentwood, Hunter M. Temple, declined to approve unrestricted athletic eligibility for Steffes. In a letter to Jim Cheffers, the Los Angeles City Section Director of Athletics for CIF, Mr. Temple stated that he supported the Rule 214 restriction because "a coherent athletic program can only be achieved if students complete [their] program here [at Brentwood School]."

Steffes then began an appeal process which eventually took him through the multiple stages of CIF administrative review. He first filed an appeal petition with the CIF, Los Angeles City Section, for unrestricted eligibility (an application for a "hardship" waiver). Steffes' "hardship" waiver application set forth three categories of asserted hardship: financial, academic and transportation. The petition was denied by the Rules Committee of the

CIF, Los Angeles City Section. Steffes unsuccessfully appealed that decision to the Los Angeles City Section of the CIF Interscholastic Athletics Committee; to the Los Angeles Unified School District Administrator; and to the Commissioner of the CIF.

Finally, on December 20, 1984, Steffes filed a complaint against defendants for injunctive relief, declaratory relief and emotional distress. On the same day, Steffes filed an ex parte application for a temporary restraining order and an order to show cause re preliminary injunction, seeking to enjoin the enforcement as to him of Rule 214 athletic ineligibility.

The court denied Steffes' request for a temporary restraining order but scheduled a hearing on his request for a preliminary injunction. At the January 24, 1985, hearing on the application for preliminary injunction, the court applied the "rational basis" test to review Rule 214. It determined that "there is a rational basis for the rule," and that "Rule 214 is a reasonable, necessary and valid provision for the prevention of practices detrimental to the educational objectives of California high schools." The court further found that "the CIF L.A. City section [had] adopted and administered, in a fair, impartial and reasonable way, rules and standards for the implementation of the hardship exception to the ineligibility provisions of Rule 214." Accordingly, the court denied Steffes' request for a preliminary injunction. Steffes appealed the denial.

## CONTENTIONS

1. The trial court erred in applying the "rational basis" test, rather than the "strict scrutiny" test, to review Rule 214 because, under the California Constitution, the fundamental right to a public school education includes the right to participate in interscholastic athletics.

a. Rule 214 impermissibly deprives Steffes of his fundamental right to participate in extracurricular activities offered by a public school.

2. Rule 214 violates state law because, according to the California Education Code, promulgation of rules governing interscholastic athletics is limited to the Department of Education and the Superintendent of Public Instruction.

3. Waivers of Rule 214 athletic ineligibility are administered in an arbitrary manner because the CIF, Los Angeles City Section, has not promulgated rules and regulations in regard to these waivers.

## DISCUSSION

### I. *Mootness*

 The Los Angeles City School District, CIF, and CIF, Los Angeles City Section, urged that the appeal in this case be dismissed for mootness. They point out that, inasmuch as Rule 214 rendered Steffes ineligible for varsity level athletic competition for only one calendar year, its restriction on Steffes' athletic participation is no longer effective.

A similar argument was raised in *John A.* v. *San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301 [187 Cal.Rptr. 472, 654 P.2d 242]. In that case, a public high school student, expelled for assaulting two other students after a football game, appealed from the trial court's denial of his petition for writ of mandate to compel the high school to readmit him. (*Id.,* at p. 304.) The school district argued the appeal was rendered moot by the student's readmission to school. (*Id.,* at p. 307.) In refusing to dismiss the appeal for mootness, the appellate court stated: "Even if that were so, this case comes within the well-recognized qualification to the general rule that where, as here, the appeal presents questions of continuing public interest that are likely to recur, the resolution of those issues is appropriate." (*Ibid.*)

The questions presented by the instant appeal concern the rights of a student who seeks participation in interscholastic athletics after transferring from one school to another. The answers to these questions are of significance to students, parents, school boards, school administrators, and voluntary organizations, such as CIF, which have responsibility for administering interscholastic athletics. Therefore, we address the issues raised on the merits.

### II. *The trial court did not err in applying the "rational basis" test to determine whether Rule 214 violates the equal protection guarantee of the California Constitution, because the right to participate in interscholastic athletics is not a fundamental right requiring "strict scrutiny."*

 Steffes contends the trial court erred in denying his request for a preliminary injunction because it applied the "rational basis" test to determine whether Rule 214 violates the equal protection guarantee of the California Constitution. (Cal. Const., art. I, § 7, subds. (a), (b); and art. IV,

§ 16, subd. (a).)[2] He argues the trial court should have applied the "strict scrutiny" standard of review, because the fundamental right to a public school education, which is guaranteed by the California Constitution, includes the right to participate in interscholastic athletics.

We note initially that, inasmuch as CIF is an organization with responsibility for administering interscholastic athletics in all California secondary schools (see Ed. Code, § 33353), the enforcement of its rules constitutes "state action" for purposes of constitutional analysis.

■ California employs the traditional two-tier test of equal protection to review discriminatory legislative classifications. (*Owens* v. *City of Signal Hill* (1984) 154 Cal.App.3d 123, 127 [201 Cal.Rptr. 70]; *Bobb* v. *Municipal Court* (1983) 143 Cal.App.3d 860, 865 [192 Cal.Rptr. 270, 39 A.L.R.4th 432].) The applicable test depends on the nature of the right infringed. When the state regulates economic or social relations, and no fundamental right is in issue, there must be a rational relationship between the law and the state goal. (*Owens* v. *City of Signal Hill, supra,* 154 Cal.App.3d at p. 127; *Exxon Corp.* v. *Governor of Maryland* (1978) 437 U.S. 117, 124-125 [57 L.Ed.2d 91, 99, 98 S.Ct. 2207].) The strict scrutiny test for which Steffes argues applies only in cases involving "suspect classifications" or touching on "fundamental rights." (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 767-768; *Owens* v. *City of Signal Hill, supra,* 154 Cal.App.3d at p. 128; *Bobb* v. *Municipal Court, supra,* 143 Cal.App.3d at p. 865; *McCourtney* v. *Cory* (1981) 123 Cal.App.3d 431, 439 [176 Cal.Rptr. 639].)

■ The right to public education is a fundamental right under the California Constitution. (*Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 922 [201 Cal.Rptr. 601, 679 P.2d 35]; *Serrano* v. *Priest, supra,* 18 Cal.3d at pp. 765-766; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 608-609 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) In *Hartzell* v. *Connell, supra,* 35 Cal.3d 899, the California Supreme Court had the opportunity to address the question whether extracurricular activities are encompassed within the

---

[2]The equal protection guarantee of the California Constitution is contained in three of its provisions.

Article I, section 7, subdivision (a) provides in part: "A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws . . . ."

Article I, section 7, subdivision (b) states in part: "A citizen or class of citizens may not be granted privileges or immunities not granted on the same terms to all citizens."

Article IV, section 16, subdivision (a) provides: "All laws of a general nature have uniform operation."

*Serrano* concept of education as a fundamental right but, it did not do so.[3] Instead, the Court simply held that "all educational activities—curricular or 'extracurricular'—offered to students by school districts fall within the free school guarantee of article IX, section 5 [of the California Constitution]." (35 Cal.3d at p. 911.)

The *Hartzell* court recognized that extracurricular activities (which would include interscholastic sports) constitute "an integral component of public education" and are " ' " "generally recognized as a fundamental ingredient of the educational process." ' " (*Id.*, at p. 909.) However, the *Hartzell* majority never concluded that extracurricular activities are encompassed within the *Serrano* concept of education as a "fundamental right."

Therefore, the question whether participation in interscholastic athletics involves a fundamental right requiring strict judicial scrutiny is an issue of first impression in California. However, other state and federal courts have recently addressed the issue.

In a number of these decisions, the courts have concluded that the right to participate in interscholastic athletics is not a fundamental right because, under the *federal constitution,* even the right to education itself is not a "fundamental right" which requires strict judicial scrutiny. (See, e.g., *San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 29-39 [36 L.Ed.2d 16, 40-47, 93 S.Ct. 1278, 1295-1300]; *Cooper* v. *Oregon School Activities Ass'n.* (1981) 52 Ore.App. 425 [629 P.2d 386, 394-395 [15 A.L.R.4th 869]; *Hebert* v. *Ventetuolo* (R.I. 1984) 480 A.2d 403, 407; *Menke* v. *Ohio High School Athletic Ass'n.* (1981) 2 Ohio App.3d 244 [441 N.E.2d 620, 623].)

Other courts, based on a procedural due process analysis, have rejected the notion that participation in interscholastic athletics is a property right. (See, e.g., *Adamek* v. *Pa. Interscholastic Athletic Ass'n* (1981) 57 Pa. Comwlth. 261 [426 A.2d 1206, 1207]; *Buhlman* v. *Board of Ed. of Ramapo Cent. School* (1981) 107 Misc.2d 932 [436 N.Y.S.2d 192, 194]; *National Collegiate Athletic Ass'n* v. *Gillard* (Miss. 1977) 352 So.2d 1072, 1081.)

To the extent these other courts rely for their rationale on the federal constitution (or state constitutions which provide education is not a fundamental right), they are not directly in point. That is so because, under the

---

[3]However, Chief Justice Bird, the author of the majority opinion, in a separate concurring opinion, stated: "[E]xtracurricular activities—like their credit-generating counterparts—promote the constitutionally recognized purposes of public education. Accordingly, they are encompassed within the concept of *education as a fundamental interest.*" (*Hartzell* v. *Connell, supra,* 35 Cal.3d at p. 923, italics added.)

California Constitution, public education is itself a fundamental right requiring strict judicial scrutiny (*Serrano* v. *Priest, supra,* 18 Cal.3d at pp. 765-766; *Serrano* v. *Priest, supra,* 5 Cal.3d at pp. 608-609), while public education is not a fundamental right under the federal constitution (see *San Antonio School District* v. *Rodriguez, supra,* 411 U.S. 1, 29-39 [36 L.Ed.2d 16, 40-47]).

■ However, the fact that public education is a fundamental right under the California Constitution does not compel a finding that in California the right to participate in interscholastic athletics is also a fundamental right entitled to the highest degree of constitutional protection. Therefore, we hold that an equal protection challenge involving that right is properly tested by the rational basis standard, rather than by the strict scrutiny standard of judicial review. (See *Owens* v. *City of Signal Hill, supra,* 154 Cal.App.3d at pp. 127-128; *McCourtney* v. *Cory, supra,* 123 Cal.App.3d at p. 439.)

### III. *Rule 214 is rationally related to the State's valid and legitimate interest in eliminating or minimizing athletic recruitment problems in secondary schools.*

■ Steffes contends that Rule 214 "impermissibly deprives [him] of his right to participate in extracurricular activities offered by a public school." He claims that although the rule "is designed to prevent recruitment of students at the high school level based upon athletic ability, . . . it is acknowledged that no recruitment . . . for athletic purposes was involved in his transfer." Thus, he concludes, the rule "impacts students in a manner far beyond its intended purpose" and "[t]here is no rational basis or nexus between a change, or lack of change of residence, and improper recruitment." Steffes argues that the rule is over-inclusive because it reaches many inter-school transfers, such as his own, in which the harm it is designed to prevent (i.e., the evils of athletic recruiting) is not involved.

However, inasmuch as Rule 214 does not create an inherently "suspect class" nor impinge on a "fundamental right," it need only be rationally related to a legitimate state purpose. (See *Owens* v. *City of Signal Hill, supra,* 154 Cal.App.3d at pp. 127-128; *McCourtney* v. *Cory, supra,* 123 Cal.App.3d at p. 439.)

In *In re U.S.* ex rel. *Missouri State High Sch. etc.* (8th Cir. 1982) 682 F.2d 147, the district court was confronted with a transfer rule of the Missouri State High School Activities Association. The rule, which is similar in effect to Rule 214, barred a student's participation in interscholastic athletics for a period of one year after the student transferred from one high

school to another. (*Id.*, at p. 149.) Exceptions to the rule were allowed when the transfer was accompanied by a corresponding change in the residence of the student's parents. (*Id.*, at p. 150.)

In response to the plaintiff's assertion that this transfer rule was over-inclusive, the court stated: " 'If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' Once a rational relationship exists, and it exists here, judicial scrutiny must cease. Whether the rule is wise or creates undue individual hardship are policy decisions better left to legislative and administrative bodies. Schools themselves are by far the better agencies to devise rules and restrictions governing extracurricular activities. Judicial intervention in school policy should always be reduced to a minimum." (*Id.*, at pp. 152-153, fn. omitted.)

Here, Rule 214 was obviously designed to prevent school-shopping by promising young high school athletes and to prevent their recruitment by overzealous coaches, fans and faculty members. The administrative difficulties and political pressures associated with making individual determinations regarding the validity of reasons given for an inter-school transfer, are valid and justify adherence to the policy decision embodied in Rule 214.

We conclude, therefore, that inasmuch as Rule 214 bears a rational relation to the purposes for which it was designed, the rule does not offend the California Constitution.

### IV. *CIF is authorized by state law to promulgate rules governing interscholastic athletics in secondary schools.*

■ Steffes contends that no legislative authority authorizes CIF to enact rules pertaining to eligibility for, and participation in, interscholastic athletics. He argues that the California Education Code limits promulgation of rules governing participation in interscholastic athletics to the Department of Education and Superintendent of Public Instruction, and thus Rule 214 violates State law.[4]

Steffes asserts Education Code section 33352 requires the Department of Education and Superintendent of Public Instruction, not CIF, to exercise general control over interscholastic athletics. We disagree.

---

[4]Steffes' reliance on *Cabrillo Community College Dist.* v. *California Junior College Association* (1975) 44 Cal.App.3d 367 [118 Cal.Rptr. 708], is misplaced. *Cabrillo* is inapposite because that case involved specific Education Code sections "which govern the establishment of and admissions to the public community colleges of this state." (*Id.*, at p. 371.)

Prior to its 1981 amendment, Education Code section 33352 provided: "The Department of Education shall exercise general supervision over the courses of physical education in elementary and secondary schools of the state; exercise general control over all athletic activities of the public schools. . . ."

In 1981, however, the phrase "exercise general control over all athletic activities of the public schools" was deleted. (Stats. 1981, ch. 1001, § 1, p. 3866.) The provisions relating to general control over athletic activities is now covered by section 35179. (Stats. 1981, ch. 1001, § 5, p. 3868.)[5]

Education Code section 35179 provides: "Each school district governing board shall have general control of . . . all aspects of the interscholastic athletic policies" (subd. (a)) and authorizes the governing boards' voluntary associations to enact and enforce rules "relating to eligibility for, and participation in, interscholastic athletic programs" (subd. (b)).

Education Code section 33353 makes clear that CIF is such a voluntary association: "The California Interscholastic Federation is a voluntary organization consisting of school and school related personnel with responsibility, generally, for administering interscholastic activities in secondary schools."

Therefore, although Education Code section 33352 gives the Department of Education "general supervision over the courses of physical education," sections 35179 and 33353 give voluntary associations, such as CIF, authority to enact and enforce rules relating to eligibility for, and participation in, interscholastic athletics.

---

[5]Education Code section 35179 provides in pertinent part:

"(a) Each school district governing board shall have general control of, and be responsible for, all aspects of the interscholastic athletic policies, programs, and activities in its district, including, but not limited to, eligibility . . . .

"(b) Governing boards may enter into associations or consortia with other boards for the purpose of governing regional or statewide interscholastic athletic programs by permitting the public schools under their jurisdictions to enter into a voluntary association with other schools for the purpose of enacting and enforcing rules relating to eligibility for, and participation in, interscholastic athletic programs among and between schools.

"(c) Each governing board, or its designee, shall represent the individual schools located within its jurisdiction in any voluntary association of schools formed or maintained pursuant to this section.

"(d) No voluntary interscholastic athletic association, of which any public school is a member, shall discriminate against, or deny the benefits of any program to, any person on the basis of race, sex, or ethnic origin.

"(e) Interscholastic athletics is defined as those policies, programs, and activities which are formulated or executed in conjunction with, or in contemplation of, athletic contests between two or more schools, either public or private."

## V. *The trial court's determination that CIF, Los Angeles City Section, has promulgated rules and regulations regarding waivers of Rule 214 ineligibility was correct.*

Steffes contends waivers of Rule 214 ineligibility are administered in an arbitrary manner. He urges that CIF, Los Angeles City Section, has failed to adopt written rules and regulations regarding such waivers and, therefore, that it does not review waiver requests in accordance with "any prescribed criteria for 'hardship' or otherwise."

The trial court apparently disagreed, noting that CIF, Los Angeles City Section, has "set down some guidelines for the person who petitions. [¶] The rules are [that a petitioner requesting unrestricted eligibility has] to come up with something that meets the criteria set forth in the [application form for a hardship waiver]."

■ "In resolving the issue of sufficiency of the evidence, we are bound by the established rules of appellate review that all factual matters will be viewed most favorably to the prevailing party [citations] and in support of the judgment [citation] . . . . 'In brief, the appellate court ordinarily *looks only at the evidence supporting the successful party, and disregards the contrary showing.*' " (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925 [101 Cal.Rptr. 568, 496 P.2d 480], italics in original.)

■ An examination of the record shows that CIF, Los Angeles City Section, has set forth the criteria to be used in evaluating waivers of Rule 214 ineligibility on its application form for a hardship waiver. The application specifies five general categories of hardship: (1) familial; (2) financial; (3) legal; (4) medical; and (5) other. The application also includes 21 subparts of supporting material describing the alleged hardship. A petitioner requesting a waiver is thus required to specify the basis for his or her hardship request and to furnish supporting material, statement or data describing the asserted hardship. The apparent purpose of the application is to assure that no waivers of athletic ineligibility are granted for purely voluntary inter-school transfers.

The application thus provides the Rules Committee of CIF, Los Angeles City Section, with specific information from which it can determine whether the asserted hardship in a particular case is sufficient to warrant unrestricted athletic eligibility.

Accordingly, the trial court correctly concluded, based on this evidence, that "CIF Los Angeles City section has adopted and administered, in a fair,

impartial and reasonable way, rules and standards for the implementation of the hardship exception to the ineligibility provisions of Rule 214."

## CONCLUSION

The rules, regulations and procedures discussed herein, as they relate to the interscholastic athletic transfer rule, are prophylactic in nature, reasonable in scope and rationally based. As such, they neither trammel upon fundamental rights nor occasion unnecessary burdens.

Curtailment or reduction of the abuses and transgressions which threaten to undermine student athletics are salutary goals which preserve equity between schools and protect the integrity of extracurricular programs.

## DISPOSITION

The order of the trial court denying the preliminary injunction is affirmed.

Klein, P. J., and Danielson, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 2, 1986. Bird, C. J., was of the opinion that the petition should be granted.